CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

SEP 15 2016

JULIA C. DUDLEY, CLERK
BY: HMcDonaed
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HERNAN NAVARRO,<br>Plaintiff, | ) <br> ) <br> ) | Civil Action No. 7:15-cv-00635 |
| v. | ) <br> ) | **MEMORANDUM OPINION** |
| HAROLD CLARKE, <u>et al.</u>,<br>Defendants. | ) <br> ) <br> ) | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |

Hernan Navarro, an inmate housed in Virginia and proceeding <u>pro se</u>, filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants: Harold Clarke, the Director of the Virginia Department of Corrections ("VDOC"); Leslie J. Fleming, the Warden of the Wallens Ridge State Prison ("WARSP"); R. Fleenor, a WARSP Counselor; and Jimmy Collins, a WARSP Unit Manager. Liberally construed, Plaintiff complains that Defendants violate his Fourteenth Amendment right to equal protection and due process by not requesting or approving his transfer from WARSP to a less secure facility. Defendants filed a motion for summary judgment, arguing qualified immunity, and Plaintiff filed a cross-motion for summary judgment. After reviewing the record, I grant Defendants' motion for summary judgment as to due process claims and the equal protection claims against Director Clarke and Unit Manager Collins. However, I deny Plaintiff's motion for summary judgment and deny Defendants' motion as to the equal protection claims against Warden Fleming and Counselor Fleenor.

I.

Plaintiff alleges that he is serving a life sentence imposed in the United States Virgin Islands ("USVI") but is incarcerated within the VDOC pursuant to the Interstate Corrections Compact between the USVI and the VDOC ("Contract"). Plaintiff included one page of the

Contract with the complaint, which reads in pertinent part, "Any Virgin Islands Inmate may, at the discretion of VDOC, be transferred to any Facility under the control of the VDOC. Such transfers will be effected by officers of the VDOC and at the expense of the VDOC."

Plaintiff argues that defendants violate the Fourteenth Amendment by housing him in such a secure facility without considering reducing his security level for a chance to transfer out of WARSP. Plaintiff has requested numerous times to be considered for a transfer from WARSP to a less secure facility. However, staff, including defendants Counselor Fleenor and Unit Manager Collins, repeatedly told Plaintiff that he must first contact Shelly DeWese, a correctional administrator in the USVI, to approve his request before VDOC officials will consider reducing his security classification and transferring him to another VDOC facility.

Defendants explain that, as a result of the Contract, the VDOC has designated housing for USVI inmates at Red Onion State Prison, a level five prison; WARSP, another level five prison; and Keen Mountain Correctional Center, a level four prison. USVI inmates at each prison are provided the same programs and services as the other inmates at that particular prison. Warden Fleming explains, "It is our procedure at W[A]RSP that if a Virgin Islands offender wants to be transferred to another VDOC facility, that is a lower security level than his present facility, he must follow the instructions given to him by his counselor." Without citing any policy or Contract provision, Counsel Fleenor alleges:

> If a Virgin Islands offender wants to be transferred to another VDOC facility that is a lower security level than his present facility, he must send a formal letter to Shelley DeWise with the Virgin Islands DOJ requesting a reduction in his security level. At that time, Virgin Islands DOJ would contact the Central Classification Services (CCS) unit at VDOC headquarters to retrieve information from CCS concerning the offender's behavior, institutional adjustment, disciplinary records, period of confinement, etc. Should the Virgin

2

> Islands DOJ decide to reduce the offender's security level, they would then contact CCS to inform them of the change. The decision to reduce the offender's security level is the sole discretion of the Virgin Islands DOJ.

(Fleenor Aff. ¶ 7.) Counselor Fleenor allegedly could forward his own recommendation to CCS about whether to reduce Plaintiff's security level; however, the criteria Counselor Fleenor would review for that recommendation is the same criteria allegedly considered by CCS and the USVI.

None of the parties provided the full text of the Contract. Nonetheless, the WARSP law library supervisor later informed Plaintiff that there was no policy at WARSP that required him to contact DeWese. Other VDOC staff explained to Plaintiff that institutional staff must initiate transfer recommendations, and DeWese explained that a request for a transfer must be made via his WARSP prison counselor, not her.

Plaintiff explains that, as a USVI inmate, he does not receive an annual review to be eligible for a transfer to a less secure facility and that all other VDOC inmates receive that review and can be transferred based on a lower score. Plaintiff alleges that Warden Fleming ordered that no inmate from the USVI may be transferred from WARSP and that Counselor Fleenor said he would not transfer Plaintiff from WARSP because Plaintiff was a foreigner, had a "rich accent," was black, did not speak English well enough, was not an American, and did not have rights under the Fourteenth Amendment. Plaintiff believes that he should be evaluated for a transfer to a less secure facility in the same manner as other inmates confined within the VDOC; that no one has ever produced a written policy explaining why USVI inmates do not receive an annual review like other VDOC inmates; and that staff's refusal to consider him for a transfer based on his origin violates the Fourteenth Amendment.

3

## II.

Defendants filed a motion for summary judgment, arguing that they are entitled to qualified immunity. Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[1] Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right. Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993).

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the

---

[1] Qualified immunity also gives officials a right to avoid the burdens of discovery. Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1185 (10th Cir. 2001) (citing Behrens v. Pelletier, 516 U.S. 299, 308 (1996)). Thus, the initial determination that qualified immunity will not apply must be made before discovery is permitted. See id. Accordingly, Plaintiff's motion for discovery must be denied at this time. I also deny Plaintiff's motion asking me to compel two non-defendants to file affidavits because Plaintiff does not presently establish any need for a court order. Cf. Fed. R. Civ. P. 31. I further note that Plaintiff is not relieved from paying fees and costs from for subpoenas merely because he is proceeding in forma pauperis. See, e.g., Douglas v. McCarty, 87 F. App'x 299, 302 (4th Cir. 2003).

4

movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

## III.
### A.

To the extent Plaintiff raises a procedural due process claim, it must fail. Plaintiff does not have a federal right to housed in any particular VDOC facility. Meachum v. Fano, 427 U.S. 215, 229 (1976); Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). Plaintiff does not allege that the Contract creates any liberty interest in a specific housing assignment, and VDOC officials have broad discretion to determine the facility at which Plaintiff is housed. See, e.g., Sandin v. Conner, 515 U.S. 472, 486-87 (1995). Additionally, Plaintiff acknowledges, and his attachment to the complaint shows, that the Contract authorizes the VDOC to house Plaintiff in WARSP or any other VDOC facility. Furthermore, Plaintiff fails to describe how his transfer from the USVI to WARSP is an atypical and significant hardship in relation to the ordinary incidents of prison life. None of the conclusory descriptions of prison life at WARSP constitutes a violation of due process. See, e.g., Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997). Moreover, Plaintiff cannot rely on labels and conclusions to state an actionable claim, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and a claim that prison officials have not followed their own independent policies or procedures also does not state a constitutional claim,

5

Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990). Accordingly, Defendants are entitled to qualified immunity and summary judgment for a procedural due process claim.

B.

The Equal Protection Clause requires that persons similarly situated be treated alike. Plyer v. Doe, 457 U.S. 202 (1982). To state an equal protection claim, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiff fails to state an equal protection claim against Director Clarke or Unit Manager Collins. Plaintiff's claim against Director Clarke is based on respondeat superior, but respondeat superior is not actionable via § 1983. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Plaintiff's claim against Unit Manager Collins is based only on Collins's responses to Plaintiff's grievances, but Plaintiff does not have a constitutional right to participate in a grievance process. See, e.g., Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). Furthermore, Plaintiff does not establish that any act or omission by Director Clarke or Unit Manager Collins involved a violation of a federal right or that any act or omission was a result of intentional or purposeful discrimination. Accordingly, Director Clarke and Unit Manager Collins are entitled to qualified immunity and summary judgment.

Plaintiff has adequately alleged that Warden Fleming and Counselor Fleenor violated clearly established law concerning the Equal Protection Clause. According to Plaintiff, current VDOC policy requires all inmates in the custody of the VDOC at WARSP, including him, to receive an annual review to score his security level. If the security level is scored below the

security level of the facility in which the inmate resides, the inmate would be eligible for a transfer to a less secure facility. No party has offered an official VDOC policy that distinguishes annual reviews, security level determinations, and transfers differently between "Islander" and "non-Islander" inmates. Furthermore, Plaintiff alleges that, unlike "non-Islanders," Warden Fleming has instituted a custom, policy, or practice to preclude "Islander" inmates at WARSP, like Plaintiff, from ever leaving WARSP, regardless of the security level determined at an annual review. Plaintiff also alleges that Counselor Fleenor refuses to begin the process to conduct an annual review or request a transfer due to racial animus against "Islanders." It can certainly be said that it had been clearly established at the relevant times that prison officials could not discriminate against prisoners based on their race or ethnicity. Wolff v. McDonnell, 418 U.S. 539, 556 ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination."). "Clearly established law" means "not only already specifically adjudicated rights, but [also] those manifestly included within more general applications of the core constitutional principle invoked." Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992).

Nonetheless, summary judgment is further precluded for these defendants due to disputes of material fact about whether a policy or custom exists that bars Plaintiff from receiving an annual review or whether correctional officials in the USVI or the VDOC are responsible for instituting an annual review or transfer for Plaintiff.[2] Counselor Fleenor offers, without proof, that Dewese in the USVI is responsible for approving transfers of VDOC inmates, but the evidence in the record, including a letter from Dewese herself, suggests that Counselor Fleenor's

---

[2] Defendants also did not address any requisite level of scrutiny for the unidentified policy. See, e.g., Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995); City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-40 (1985); Turner v. Safley, 482 U.S. 78, 84 (1987).

7

belief is incorrect. Viewing the evidence in a light most favorable to Plaintiff, there is no VDOC policy that requires WARSP inmates from the USVI to be treated differently than any other inmate at WARSP or in the VDOC as Counselor Fleenor suggests.

## IV.

For the foregoing reasons, I grant Defendants' motion for summary judgment as to the due process and equal protection claims against Director Clarke and Unit Manager Collins. However, I deny Plaintiff's motion for summary judgment and deny Defendants' motion as to the equal protection claims against Warden Fleming and Counselor Fleenor. Because qualified immunity has been resolved, Defendants' motion for a protective order is denied. See, e.g., Pearson v. Callahan, 555 U.S. 231-32 (2009); Behrens v. Pelletier, 516 U.S. 299, 308 (1996). Plaintiff should send his discovery requests to the remaining defendants within thirty days, and they shall have thirty days thereafter to respond.

**ENTER**: This 15th day of September, 2016.

*Jackson L. Kiser*
Senior United States District Judge